**FILED**

June 01, 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: ___Christian Rodriguez___
                    DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| FCCI INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:23-CV-1433-RP |
| | § | |
| EASY MIX CONCRETE SERVICES, LLC, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court is FCCI Insurance Company's ("FCCI") Motion for Partial Summary Judgment on the issue of duty to defend. (Dkt. 43). Defendant Easy Mix Concrete Services, LLC ("Easy Mix") filed a Response in Opposition, (Dkt. 46), to which FCCI replied, (Dkt. 47). Because the Court finds that the three underlying lawsuits that remain active fall within an exclusion in Easy Mix's insurance contract, the Court finds no duty to defend and grants summary judgment on that issue.

## I. BACKGROUND

This is an insurance dispute arising out of alleged defects in the concrete used for a number of pools in the Austin, Texas area. (Am. Compl., Dkt. 31, at 2). Alkali-aggregate reaction ("AAR") is an umbrella category of reactions in concrete that includes both alkali-carbonate reaction ("ACR") and alkali-silica reaction ("ASR"). The distinction between AAR and ASR is relevant to this litigation—specifically as to the specific role of silica—but either term describes a reaction in concrete that can lead to cracking when exposed to moisture. (*See* Mot. Summ J., Dkt. 43, at 8).

Instances of concrete cracking in pools around Austin led to cases filed against Easy Mix, among other defendants, in Burnet, Gillespie, Hays, Travis, and Williamson Counties, Texas. (Am. Compl., Dkt. 31, at 2). Much of that litigation was consolidated into a multidistrict litigation docket

1

by the Supreme Court of Texas, Docket No. 23-0212, ("the MDL"), before the 345th Judicial District Court of Travis County, Texas. (*Id.* at 2–3).

FCCI brought this action focused on a representative sample of six underlying cases in the MDL, seeking declaratory relief from the Court as to (1) its duty to defend Easy Mix in the underlying suits and (2) its duty to indemnify Easy Mix in those suits. (*Id.* at 2, 9). A Motion to Dismiss or Stay Certain Claims filed by Easy Mix, (Dkt. 8), was referred to United States Magistrate Judge Dustin Howell for report and recommendation. (Text order dated February 6, 2024). The Magistrate Judge recommended staying FCCI's claims related to the duty to indemnify and duty to defend until ripe, (R. &R. , Dkt. 20). The Court adopted the Report and Recommendation, staying FCCI's claims. (Dkt. 28). On November 15, 2024, FCCI filed its First Amended Complaint. (Dkt. 31).

On July 11, 2025, FCCI filed the Motion for Partial Summary Judgment that is before the Court, asking for summary judgment only on the duty to defend. (Dkt. 43). The Parties have agreed that resolving this Motion for Summary Judgment would resolve all ripe claims in the case and that this is a question of law that is appropriate for resolution on summary judgment. (Status Report, Dkt. 54, at 2).

The Parties have also indicated that three underlying lawsuits at issue here have concluded.[1] (*Id.* at 3). As such, the only issue before the Court in this Order is the narrow question of whether FCCI has a duty to defend Easy Mix in the four remaining lawsuits: the "Stag Pools Suit,"[2] the

---

[1] The Parties represent that the "House Suit," "Holden Suit," and "Gregg Suit" have been resolved. (*Id.* at 3). As far as the Court can discern, the Holden Suit was included as a representative underlying suit in FCCI's Original Complaint, (Dkt. 1, at 2), but does not appear in FCCI's Amended Complaint, (Dkt. 31). As such, the Court concludes that there are still four active underlying suits, as discussed below.

[2] This suit was referred to as the "Subro Suit" in FCCI's Amended Complaint, (Dkt. 31, at 2), but is referred to as the "Cincinnati/Stag Pools Suit" in FCCI's Motion for Partial Summary Judgment, (Dkt. 43, at 3). For brevity's sake but to more closely track the Parties' more recent pleadings, the Court will refer to *The Cincinnati Specialty Underwriters Insurance Company as Subrogee of Stag Pools, LLC and Stag Pools, LLC v. Easy Mix*

"Shumaker Suit," the "Quintana Suit," and the "Ryan Suit." (Dkt. 54, Status Report, at 3; Am. Compl., Dkt. 31, at 3).

### 1. Silica Exclusion

The Parties' arguments on FCCI's duty to defend turn on the Silica or Silica-Related Dust Exclusion ("Silica Exclusion") in both Easy Mix's primary and umbrella policies, which reads, in relevant part:

> This insurance does not apply to:
> Silica or Silica-Related Dust
> . . .
> b. "Property damage" arising, in whole or in part, out of the actual, alleged, threatened, or suspected contact with, exposure to, existence of, or presence of "silica" or "silica-related dust";
> c. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or in any way responding to assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

(Am. Compl. Ex. A, Dkt. 31, at 147; Ex. B, Dkt. 31, at 325). In turn, the Definitions section of both policies includes the following language:

> 1. "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.
> 2. "Silica-related dust" means a mixture or combination of silica and other dust or particles.

(*Id.*). FCCI argues that the policy is unambiguous and that the pleadings in the underlying lawsuit allege facts—specifically, damage caused by ASR—that fall within the silica exclusion. (Mot. Summ. J., Dkt. 43, at 16). As a result, FCCI argues that, as a matter of law, it has no duty to defend Easy Mix in the underlying lawsuits because no coverage existed for those suits. (*Id.*). By contrast, Easy Mix argues that the underlying lawsuits identify other possible bases for liability beyond silica and that structural damage from ASR goes beyond the ordinary understanding of harms from silica

---

*Concrete Services, LLC*, Cause No. D-1-GN-23-002047, 98th Judicial District Court of Travis County, Texas, as transferred to the MDL as the "Stag Pools Suit."

exposure, such that ASR is not included in the policy's silica exclusion and there is a duty to defend. (Resp., Dkt. 46, at 5).

## II. LEGAL STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). "It is axiomatic that where questions of law alone are involved in a case, summary judgment is appropriate." *Int'l Ass'n of Machinists & Aerospace Workers, Dist. 776 v. Texas Steel Co.*, 538 F.2d 1116, 1119 (5th Cir. 1976).

"Whether an insurer has a duty to defend [under Texas law] is a question of law." *Lyda Swinerton Builders, Inc. v. Oklahoma Sur. Co.*, 903 F.3d 435, 445 (5th Cir. 2018). Under applicable law, "it is well settled that an insurer's duty to defend is triggered if at least one of several claims in the plaintiff's [petition] potentially falls within the scope of coverage, even if other claims do not. *Sec. Nat'l Ins. Co. v. Stag Pools, LLC*, No. A-22-CV-0622-JRN, 2024 WL 5185358, at *2 (W.D. Tex. Mar. 20, 2024) (citing *Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 120 (5th Cir. 1983)).

To determine whether claims fall within the scope of coverage, Texas employs an "eight-corners" or complaint allegation rule, comparing the factual allegations of the petition to the terms of the policy—and therefore generally not considering extrinsic evidence. *Monroe Guaranty Ins. Co. v. BITCO Gen. Ins. Corp.*, 640 S.W.3d 195, 199 (Tex. 2022). Moreover, the eight corners rule has a bias in favor of a duty to defend where coverage is uncertain. As the Texas Supreme Court has explained, "in case of doubt as to whether or not the allegations of a complaint against the insured state a cause

4

of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor." *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). Or, as the Fifth Circuit has phrased it, "[w]hen in doubt, defend." *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 369 (5th Cir. 2008).

However, the eight corners rule also has exceptions, one of which means that uncertainties may be examined further instead of simply being resolved in favor of the insured. *See Monroe*, 640 S.W.3d at 199 ("While the eight-corners rule is a settled feature of Texas law . . . it is not absolute."). Specifically, in *Monroe*, the Texas Supreme Court established the following rule:

> [I]f the underlying petition states a claim that could trigger the duty to defend, and the application of the eight-corners rule, due to a gap in the plaintiff's pleading, is not determinative of whether coverage exists, Texas law permits consideration of extrinsic evidence provided the evidence (1) goes solely to an issue of coverage and does not overlap with the merits of liability, (2) does not contradict facts alleged in the pleading, and (3) conclusively establishes the coverage fact to be proved.

*Id.* at 201–02. In other words, a court considering an insurer's duty to defend should ask: "does the pleading contain the facts necessary to resolve the question of whether the claim is covered?" *Id.* at 202. If the answer is no, the court should consider whether extrinsic evidence is available that meets the requirements of *Monroe*—including conclusively establishing coverage or the lack of coverage, such that there will not "remain a genuine issue of material fact as to the coverage fact to be proved." *Id.* at 203.

### III. DISCUSSION

Here, the Court is satisfied that the plain language of the Silica Exclusion is broad enough to cover damage caused by ASR. The exclusion states that "[t]his insurance does not apply to . . . '[p]roperty damage' arising, in whole or in part, out of the actual, alleged, threatened, or suspected contact with, exposure to, existence of, or presence of 'silica' or 'silica-related dust.'" (Am. Compl. Ex. A, Dkt. 31, at 147). Despite Easy Mix's argument that the general understanding of risks from

silica are respiratory injuries due to inhalation, (Resp., Dkt. 46, at 11–15), the plain, unambiguous language of the policy is broad enough to encompass other kinds of harm caused, in whole or in part, by the presence of silica—including property damage caused by ASR. As other district courts in Texas have explained, "[t]his Court is bound by well-settled Texas law providing that the plain, unambiguous language of insurance contracts controls." *Balfour Beatty Constr., LLC v. Liberty Mut. Ins. Co.*, 366 F. Supp. 3d 836, 841 (S.D. Tex. 2018), *aff'd sub nom. Balfour Beatty Constr., L.L.C. v. Liberty Mut. Fire Ins. Co.*, 968 F.3d 504 (5th Cir. 2020) (citing *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 129 n.8 (Tex. 2010)). And Easy Mix does not seriously dispute that ASR, where it occurs, involves silica—arguing instead that ASR is only one possible cause of the damages alleged in the underlying suits. (*See* Resp., Dkt. 46, at 7 ("Certain plaintiffs in the Underlying Lawsuits theorize that the alleged cement cracking may be the result of a chemical reaction occurring in the concrete . . . [i]n the case of ASR, the Plaintiffs theorize that this chemical reaction is occurring in part through an interaction with silica in the concrete . . .")). Therefore, the crucial question here is whether the underlying suits involve ASR. Should those suits involve ASR, the "actual, alleged, threatened, or suspected . . . presence of 'silica'" would then be at least "in part" a cause of the alleged property damage. (*See* Am. Compl. Ex. A, Dkt. 31, at 147; Ex. B, Dkt. 31, at 325).

The pleadings in at least three of the underlying cases leave that question open. The Stag Pools Suit alleges that an inspector concluded that "the pool exhibited signs of alkali-aggregate reaction ('AAR')"—which, of course, could or could not be ASR. (Mot. Summ. J., Dkt. 43, at 7). The Shumaker Suit alleges cracks and defects and "likely alkali-silica reaction (ASR) from contaminated concrete." (*Id.* at 7–8). And the Ryan Suit alleged "the formation of Alkali Aggregate Reaction ('AAR') resulting in cracks in the shotcrete" and discussed "amorphous gelatinous material that contains silicon which is the subject of this case." (*Id.* at 9). By either alleging AAR or suggesting

6

ASR as a *likely* cause—but not flatly alleging it as a cause—each of these pleadings established ASR as a possible cause, but did not squarely place the alleged damage within the Silica Exclusion. By contrast, the Quintana Suit alleged that a core analysis showed "that the concrete has experienced the ASR concrete defect." (*Id.* at 8). While that pleading also suggested that "both ASR and a poorly installed structure in the form of insufficient rebar placement are contributing to the cracking problem," (*id.*), the Quintana Suit squarely alleges ASR—and therefore silica—as at least a partial cause of the alleged damage, and therefore on its face falls within the Silica Exclusion.

However, because the involvement of ASR is a question left open by gaps in the underlying pleadings in several underlying suits, the *Monroe* rule directs the Court to consider whether appropriate extrinsic evidence resolves that question. Here, extrinsic evidence does. Specifically, in the MDL, Easy Mix filed a "Supplemental Court Ordered List of Common Issues," describing commonalities between all of the MDL cases—including all of the underlying cases before the Court here. (*See* Dkt. 43-8). In that List, Easy Mix asserted that "[a]ll claims allege 'ASR' or 'Concrete Cancer' as cause of the cracking." (*Id.* at 1).

This evidence meets the *Monroe* standard. It (1) goes solely to the issue of overage and does not overlap with the merits of liability, because it concerns only what the alleged cause was in the underlying suits, (2) does not contradict facts alleged in the pleadings, which all suggested either ASR or AAR—which, again, can be ASR—as a possible cause, and (3) conclusively establishes that ASR is, in Easy Mix's understanding, alleged in all suits, because the statement is an assertion of that fact by Easy Mix to the MDL pretrial court. *See Monroe*, 640 S.W.3d at 201–02. As a result, the Court can consider Easy Mix's statement made in the MDL, and, on the basis of those statements, concludes that each underlying suit involves ASR. Because each suit alleges ASR as at least a cause of the alleged damage, those suits fall within the Silica Exclusion.

## IV. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Defendants' Motion for Partial Summary Judgment, (Dkt. 43), is **GRANTED**. As a matter of law, FCCI does not have a duty to defend the underlying suits that remain active and were considered in this Order.

FCCI's Opposed Motion for Hearing on the Motion for Partial Summary Judgment, (Dkt. 49), is therefore **MOOT**.

The Parties have represented to the Court that a ruling on FCCI's Motion for Partial Summary Judgment will resolve all active issues in this case and that FCCI will subsequently dismiss the remaining, not-yet-ripe claims without prejudice. (Dkt. 54, at 2). As such, at this time, the Court also declares the Parties' Joint Request for Status Conference, (Dkt. 54), **MOOT.**

**IT IS FURTHER ORDERED** that FCCI shall file dismissal papers or a status report, or the Parties shall file a joint request for a status conference, **on or before June 15, 2026**.

**SIGNED** on June 1, 2026.

_____

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

8